*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* S. MILES, Minor.

UNPUBLISHED
April 15, 2025
11:38 AM

No. 372325
Oakland Circuit Court
Family Division
LC No. 22-884382-NA

Before: MALDONADO, P.J., and CAMERON and YOUNG, JJ.

PER CURIAM.

Respondent appeals as of right the order terminating her parental rights to her minor child, SM, under MCL 712A.19b(3)(g) (failure to provide proper care and custody), (i) (prior termination of parental rights because of neglect), and (j) (reasonable likelihood the child will be harmed if returned to the parent). We affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND

In February 2022, the Department of Health and Human Services ("DHHS") first began investigating respondent following the birth of her child KB, and before SM was born. DHHS initiated the investigation because of allegations that respondent was homeless and being sex trafficked by her boyfriend. The allegations included reports that respondent was shaking KB, threatening to kill him, and posting threats to harm him on social media. After unsuccessful attempts to locate respondent and KB, respondent was taken into custody by the Federal Bureau of Investigation ("FBI") for engaging in commercial sexual activities with KB present in the room. DHHS filed a petition requesting the trial court take jurisdiction over KB. The trial court authorized the petition and KB was taken into care.

As part of respondent's court-ordered treatment plan regarding KB, she was required to: (1) maintain mental health services; (2) secure stable housing; (3) complete a psychological and a psychiatric assessment; (4) participate in individual therapy; (5) participate in parenting classes; (6) participate in domestic violence batterer's intervention; (7) maintain legal income; (8) maintain consistent parenting time with KB; and (9) maintain contact with DHHS.

-1-

Respondent completed a psychiatric evaluation and was diagnosed with Bipolar 1 disorder for which she was prescribed psychotropic medication. She stopped taking that medication when she became pregnant with SM. During her pregnancy with SM, respondent was arrested regarding a domestic violence incident with her new boyfriend and incarcerated for three days. Respondent reported she was homeless, and would not tell DHHS where she slept. Respondent received Social Security income, and reported it was insufficient to meet her needs. DHHS provided respondent with information for assistance programs and housing resources. Alleging respondent failed to avail herself of these services and programming, DHHS filed a supplemental petition requesting respondent's parental rights to KB be terminated.

In August 2023, respondent moved to Virginia to live with her mother, and later gave birth to SM. After two complaints were made concerning respondent's mental health and SM missing a pediatric appointment, Virginia Child Protective Services ("Virginia CPS") contacted Michigan DHHS. Respondent returned to Michigan in September 2023 and moved in with her new boyfriend and his mother (SM's putative father and grandmother).[1] That same day, a CPS neglect complaint was made alleging that respondent traveled to Michigan "without proper baby items," including a car seat.

DHHS met with respondent, who confirmed SM missed a pediatric appointment in Virginia and explained SM did not have a car seat until a doctor provided one. Respondent indicated she was diagnosed with bipolar disorder and depression, but stopped taking her medication because of her pregnancy with SM and was not participating in mental health services. Respondent disclosed her history of domestic violence with her current boyfriend. DHHS attempted to develop a safety plan with respondent regarding SM. DHHS told respondent to either move out of her boyfriend's home, leaving SM in the care of a relative, or SM would be removed from the home and placed in a nonrelative foster home. Respondent was "not happy with that decision" and refused to leave her boyfriend's home.

DHHS filed an emergency petition alleging SM would be harmed if she remained with respondent because of respondent's untreated mental health issues, housing instability, pending neglect proceedings regarding KB, and noncompliance with her treatment plan. DHHS requested the court: (1) authorize the petition; (2) place SM in the care of DHHS; (3) exercise jurisdiction over SM; and (4) terminate respondent's parental rights under MCL 712A.19(b)(3)(g) and (j). The order was granted and SM was taken into DHHS custody. In the meantime, respondent's parental rights to KB were terminated in December 2023, and he was adopted by his great-grandmother in Virginia.

The trial court held a bifurcated hearing regarding respondent's parental rights to SM. In April 2024, the trial court held that grounds to terminate respondent's parental rights to SM were established under MCL 712A.19b(3)(g), (i), and (j). In June 2024, the trial court found termination

---

[1] At the time of these proceedings, respondent's new boyfriend was SM's putative father, however, later DNA testing confirmed he was not SM's father. Respondent then identified her ex-boyfriend, the father of KB, as SM's putative father. DNA testing later also excluded the ex-boyfriend. SM's father is unknown, however, paternity is not at issue on appeal.

of respondent's parental rights was in SM's best interests. This appeal followed. By January 2025, SM had joined KB and her great-grandmother in Virginia.

## II. ANALYSIS

## A. RESPONDENT'S DUE PROCESS RIGHTS WERE NOT VIOLATED, AND THERE WAS CLEAR AND CONVINCING EVIDENCE OF STATUTORY GROUNDS TO TERMINATE PARENTAL RIGHTS

Respondent argues the trial court clearly erred by finding a statutory ground existed to terminate her parental rights. We disagree.

"To terminate parental rights, the trial court must find that at least one of the statutory grounds for termination in MCL 712A.19b(3) has been proved by clear and convincing evidence." *In re Pederson*, 331 Mich App 445, 472; 951 NW2d 704 (2020). This Court reviews "for clear error the trial court's factual finding that there are statutory grounds for termination of a respondent's parental rights." *In re A Atchley*, 341 Mich App 332, 343; 990 NW2d 685 (2022). "A finding of fact is clearly erroneous if the reviewing court has a definite and firm conviction that a mistake has been committed, giving due regard to the trial court's special opportunity to observe the witnesses." *In re Miller*, 347 Mich App 420, 425; 15 NW3d 287 (2023) (citation omitted).

### 1. MCL 712A.19b(3)(i)

First, respondent raises a due process issue as to statutory grounds under MCL 712A.19b(3)(i). Under this subsection, the trial court may terminate parental rights to a child if the court finds, by clear and convincing evidence, that "[p]arental rights to 1 or more siblings of the child have been terminated due to serious and chronic neglect or physical or sexual abuse, and the parent has failed to rectify the conditions that led to the prior termination of parental rights." We note, however, that respondent does not argue on appeal that the trial court erred by finding MCL 712A.19b(3)(i) supported termination. Instead, she argues only that her due-process rights to notice were violated because provision (i) was not cited in the petition to terminate her parental rights to SM. We review de novo whether child protective proceedings complied with a respondent's constitutional rights. *In re HRC*, 286 Mich App 444, 462; 781 NW2d 105 (2009). Because respondent did not raise this argument in the trial court, our review is limited to plain error affecting respondent's substantial rights. See *In re Pederson*, 331 Mich App at 463 (holding unpreserved arguments are reviewed for plain error affecting substantial rights).

Parents have fundamental due-process rights in the termination of parental rights proceedings, *In re Sanders*, 495 Mich 394, 403; 852 NW2d 524 (2014), which include notice and an opportunity to be heard, *In re Dearmon/Harverson-Dearmon*, 303 Mich App 684, 693-694; 847 NW2d 514 (2014). Here, respondent is unable to establish her due-process rights were violated.

We acknowledge that the petition to terminate respondent's parental rights, as filed, did not cite to subsection (i) as a ground for termination. However, any alleged notice issue in this regard is waived. "A waiver is an intentional relinquishment or abandonment of a known right. An affirmative expression of assent constitutes waiver. In contrast, a failure to timely assert a right constitutes forfeiture." *Nexteer Automotive Corp v Mando American Corp*, 314 Mich App 391,

395; 886 NW2d 906 (2016) (citation omitted). "A party who waives a right is precluded from seeking appellate review based on a denial of that right because waiver eliminates any error." *The Cadle Co v City of Kentwood*, 285 Mich App 240, 255; 776 NW2d 145 (2009).

At the hearing on statutory grounds, before taking any testimony, DHHS moved to amend the petition and add subsection (i) as a statutory ground warranting termination of respondent's parental rights. DHHS offered the order terminating respondent's rights to KB as evidence that statutory grounds existed under subsection (i) to terminate parental rights to SM. In response to DHHS's motion, the trial court asked respondent's attorney: "All right. . . . any objection?" Respondent's attorney replied: "no objection, your honor," and the trial court approved the amendment to the petition, and admitted as an exhibit the prior termination order as to. Not only did respondent's attorney fail to object, but he affirmatively expressed assent to waive any notice issue when the trial court solicited an objection from him and he declined the opportunity to make one. *Nexteer Automotive*, 314 Mich App at 395. Thus, the notice issue is waived on appeal. *City of Kentwood*, 285 Mich App at 255.

Additionally, based on this record, respondent had adequate notice of the nature of the proceedings and the factual allegations against her. The pre-amendment petition alleged respondent had an extensive CPS history regarding KB and was noncompliant with her treatment plan. It further alleged respondent did not have stable housing, was not taking her medications, was not participating in counseling, and SM was at risk for continued harm because the conditions leading to KB's removal had not been rectified. In other words, the factual underpinnings for a termination under subsection (i) were also the basis for the two other statutory grounds (MCL 712A.19b(3)(g) and (j)) named in the petition to terminate SM. Respondent does not dispute her parental rights to KB were terminated, nor does she argue she lacked notice of the allegations against her with respect to SM. She only argues that she did not have notice of provision (i) of the statute.

Respondent confirmed she received notice of the amended petition, which contained the same factual allegations used as the basis for the termination of respondent's parental rights to KB. After moving to add provision (i) to the petition, DHHS did not allege any new facts against respondent. Because respondent had full notice of the allegations against her and the opportunity to be heard on those allegations, respondent's due-process rights were not violated. The trial court did not clearly err in finding this statutory ground was established by clear and convincing evidence. See *In re JS and SM*, 231 Mich App 92, 98-99; 505 NW2d 326 (1998) (where the appellant does not argue that statutory grounds were not proved, the failure to briefs the merits of an allegation of error is deemed to be abandoned, and this Court is permitted to assume the lower court did not clearly err in finding clear and convincing evidence of the statutory grounds for termination).

### 2. MCL 712A.19b(3)(j)

Because termination was proper under MCL 712A.19b(3)(i), we need not specifically consider the additional grounds upon which the trial court based its decision. See *In re HRC*, 286 Mich App at 461. However, we further conclude the trial court did not clearly err by finding termination of respondent's parental rights was proper under MCL 712A.19b(j), which authorizes

termination when "[t]here is a reasonable likelihood, based on the conduct or capacity of the child's parent, that the child will be harmed if he or she is returned to the home of the parent."

Respondent lacked suitable, stable housing during the proceedings. Respondent was constantly providing DHHS with different addresses, at one point providing the address of a vacant lot, but the record is unclear if respondent ever provided her actual address because DHHS was unable to perform a home evaluation. And while it is true that the record has no evidence her mother's home in Virginia was unsuitable, respondent's own testimony about whether she would reside with her mother in Virginia was inconsistent and to the extent it was the actual plan, it was not relayed as such to DHHS. Testimony from DHHS foster care specialist Charlotte Webster established respondent was frequently back and forth between Michigan and Virginia, to the point respondent "starts services then leaves and go[es] to the other state, starts services, and then leaves again. And so, it's just become this pattern of never really starting services." Respondent was provided services from agencies in both states and failed to follow through with either.

Respondent implied she was still in Michigan for SM, and asked the trial court for more time to bond with her, however, respondent saw SM only three times since SM was removed from respondent's care in October 2023, with the last time being a virtual visit in December 2023. Respondent regularly canceled visits, resulting in her parenting time being suspended in January 2024. When DHHS questioned respondent about her barriers to visiting SM, respondent explained there were no barriers, and that she simply was not going to seek parenting time.

The trial court found respondent failed to rectify the conditions that brought her before the court regarding KB because she failed to comply with her treatment plan. Respondent has a history of untreated mental illness but failed to participate in offered mental health services. Evidence indicates respondent lied about refilling and taking her prescription medication for Bipolar Disorder. See *In re Kaczkowski*, 325 Mich App 69, 77; 924 NW2d 1 (2018) ("a parent's failure to comply with the terms and conditions of his or her service plan is evidence that the child will be harmed if returned to the parent's home") (quotation marks and citation omitted).

Respondent asserts on appeal there is no evidence her noncompliance with mental health treatment was harmful to SM or it was medically ill-advised for her to stop taking her medications. While we do not fault respondent for stopping her medication during her pregnancy with SM, we do note that the record describes respondent's unmedicated behavior as "verbally aggressive and threatening." Further, respondent was not interested in resuming her medication after SM's birth. Respondent also transported SM from Virginia to Michigan without a car seat when SM was less than one month old. When DHHS met with respondent on her return to Michigan, respondent acknowledged this information but still refused to participate in a safety plan for SM, resulting in the emergency petition being filed.

Importantly, DHHS was originally investigating respondent because of reports respondent was shaking KB, threatening to kill him, and posting threats to harm him on social media. When KB was taken into care by DHHS, respondent was in FBI custody for engaging in commercial sexual activity with KB present in the room. See *In re Hudson*, 294 Mich App 261, 266; 817 NW2d 115 (2011) ("Evidence of how a parent treats one child is evidence of how he or she may treat the other children."). While respondent is a victim of alleged sex trafficking by her ex-boyfriend, and there was a domestic violence relationship between the two, evidence indicates

respondent's ex-boyfriend remains present in her life. At respondent's psychological evaluation, she denied being sex trafficked and insisted she willingly engaged in sexual activity for money. Respondent's psychological evaluation determined she exhibited "poor parenting judgment" and had a tendency to "meet her own needs above those of her child," and concluded respondent would not be able to provide a safe and stable environment to SM.

Because respondent's unsuitable living conditions, untreated mental health struggles, and continued contact with her ex-boyfriend would likely have traumatic and harmful effects on SM, the trial court's finding that termination of her parental rights was proper under MCL 712A.19b(3)(j) was not clearly erroneous. See *In re Pederson*, 331 Mich App at 473 (evidence of physical and emotional harm can be considered for purposes of MCL 712A.19b(3)(j)).[2]

## B. TERMINATION WAS SM'S BEST INTERESTS

Finally, respondent argues the trial court clearly erred by finding termination of her parental rights was in SM's best interests. We disagree.

This Court reviews a trial court's best-interest determination for clear error. *In re White*, 303 Mich App 701, 713; 846 NW2d 61 (2014). "A finding of fact is clearly erroneous if the reviewing court has a definite and firm conviction that a mistake has been committed, giving due regard to the trial court's special opportunity to observe the witnesses." *In re Miller*, 347 Mich App at 425 (citation omitted).

"The trial court must order the parent's rights terminated if the Department has established a statutory ground for termination by clear and convincing evidence and it finds from a preponderance of the evidence on the whole record that termination is in the children's best interests." *In re White*, 303 Mich App at 713. "The trial court should weigh all the evidence available to determine the children's best interests." *Id*. We must always focus on the child—not the parent—when reviewing best interests. *In re A Atchley*, 341 Mich App at 346. When determining best interests,

> the court should consider a wide variety of factors that may include the child's bond to the parent, the parent's parenting ability, the child's need for permanency, stability, and finality, and the advantages of a foster home over the parent's home. The trial court may also consider a parent's history of domestic violence, the parent's compliance with his or her case service plan, the parent's visitation history with the child, the children's well-being while in care, and the possibility of adoption. [*In re White*, 303 Mich App at 713-714 (quotation marks and citations omitted).]

The trial court found no bond existed between SM and respondent. Respondent does not dispute this, but asserts on appeal if DHHS had not removed SM from respondent's care, a bond

---

[2] Because termination was proper under MCL 712A.19b(3)(i) and (j), we need not consider MCL 721A.19b(3)(g). See *In re HRC*, 286 Mich App at 461.

would exist. Respondent offers no evidence to support this assertion, and the record indicates the opposite. Respondent consistently canceled parenting time with SM and refused to participate in creating a bond with SM, resulting in parenting time being suspended. Webster testified that when respondent was asked what prevented her from attending parenting time, respondent replied: "Nothing. I'm about—I'm not about to change—stop my life because you all took my kid." Regarding respondent's visitation history, at the time of the termination hearing, respondent had not seen SM in six months, and Webster testified respondent "hasn't asked about [SM] in quite some time." Further, respondent never provided gifts or clothing for SM, never asked if she could attend any of SM's medical appointments, and only asked once how to re-establish parenting time.

The trial court further found, based on the psychological evaluation, respondent could not effectively parent SM. Respondent completed one parenting class regarding KB, but did not benefit. See *In re Frey*, 297 Mich App 242, 248; 824 NW2d 569 (2012) (respondent must "demonstrate that [he or she] sufficiently benefited from the services provided"). Respondent never addressed her mental health issues, never obtained suitable and stable housing, and never took advantage of services provided. The trial court considered SM's need for permanency, stablility, and finality, finding SM had spent all but the first month of her life in the care of a foster parent, with the record showing SM was happy, provided for, and bonded to her foster parent.

On appeal, respondent does not challenge any of these findings, nor does respondent argue termination was not in the best interests of SM. Respondent mainly argues the trial court clearly erred in making the determination because respondent wanted SM placed with respondent's grandmother. Respondent asserts even if the trial court "did not believe that [respondent] was the most appropriate parent or that her conduct fell short of proper parenting, it should have considered the appropriateness of her plan for adoption or guardianship" of SM.

Under MCL 722.954a(6)(a), DHHS is required to make reasonable efforts to place siblings removed from their home in the same foster care, kinship, guardianship, or adoptive placement, unless DHHS documents that a joint placement would be contrary to the well-being of any of the siblings. Contrary to respondent's arguments, the evidence showed DHHS did consider respondent's grandmother as a viable placement. DHHS had no concerns regarding the placement, and Virginia CPS was to conduct an updated home study if respondent's grandmother adopted SM. However, the record shows DHHS did not place SM with respondent's grandmother because of pending paternity tests in Michigan, because both putative fathers had indicated they would request visitation. Thus, the trial court did not clearly err in determining termination of respondent's parental rights was in SM's best interests. And to any extent respondent could establish the trial court erred by not considering placement with her grandmother, that error is harmless. MCR 2.613. As of the time of this opinion, DHHS has determined SM's father is unknown and unidentifiable. Thus, as respondent wished, SM was removed from foster care in Michigan and placed with her great-grandmother and KB in Virginia as of January 2025, with adoption proceedings to be continued.

III. CONCLUSION

Because respondent waived her due process right to notice in the trial court, she cannot challenge a violation of that right on appeal. Even so, the trial court did not clearly err in finding

statutory grounds for termination existed.  The trial court also did not err by determining termination was in SM's best interests.

We affirm.

/s/ Allie Greenleaf Maldonado
/s/ Thomas C. Cameron
/s/ Adrienne N. Young